SIMEON J. GROOT ET AL. *vs.* FLORIAN R. HITZ ET AL.

EQUITY. No. 8239.

{ Decided April 14, 1884.
{ The CHIEF JUSTICE and Justices MAC ARTHUR and Cox sitting.

1. Where the auditor files with his report alternative statements of an account, he should state which of them he considers the correct one and adopting that leave the parties to file their exceptions.

2. A suit brought by the ward on a guardian's bond, is barred by limitations if not commenced within six years after the coming of age of the ward. (Acts of Md., 1729 and 1798).

3. A judgment recovered against the administrator is not even *prima facie* evidence against the heir-at-law; the plaintiff must commence *de novo* against him upon his or her original cause of action, as if no suit had been instituted against the administrator, and the heirs-at-law are at liberty to make any defence that any one else could make to such new suit, including the defence of limitations.

4. The rule in regard to marshalling of assets does not apply to a case where a creditor, having originally, equally with all the other creditors, the right to proceed against the real as well as the personal estate of the debtor, loses by *laches* the right of recourse against the realty.

### STATEMENT OF THE CASE.

This was a creditor's suit commenced by a bill in equity against the administrator of the heirs-at-law of Florian R. Hitz, deceased, having for its object to compel the distribution of personal estate among creditors *pro rata,* and to procure a sale of the real estate in order to supply the deficiency of personal assets.

The creditor's bill was filed by Groot on the 28th day of July, 1882, and on the 26th of October, the same year, Daisy F. Casparis filed her petition to be made one of the complainants in the cause, and the controversy before the court related entirely to her claim.

The circumstances out of which her claim grew, are the following: She was a minor, and John Hitz, her uncle, was appointed her guardian, on the 20th of April, 1869, and gave his bond as guardian, with Florian Hitz, his brother, as surety. On the 28th of September, 1874, the petitioner became 21 years of age. On the 9th of April, 1880, she instituted a suit on this bond against Florian Hitz, the surety.

He died intestate, and an administrator was appointed who was made party to the suit in the usual way,.and there was finally a judgment for assets against the administrator. This was on April 4th, 1882. In July, as already stated, this original bill was filed, and in October of the same year the petition of Daisy F. Casparis was filed. The defendants, the heirs-at-law of Florian Hitz, by their guardian, filed a plea of limitations to the claim, and there was a general demurrer to this plea by the petitioner. The case was referred to the auditor who made two alternative statements of the administrator's account, and of the distribution of the personal and real assets, in one of which he included the claim of the petitioner, and from the other he excluded it; and the petitioner excepts to the account which excludes her claim, and the heirs to the other alternative statement.

ENOCH TOTTEN for Casparis.

1. The plea of the Statute of Limitations, interposed by the administrator, ought to be disregarded or stricken out. It does not lie in the mouth of an administrator, who is a public officer, with duties defined and prescribed by law, and the first of them is to pay all the just debts of his intestate, if he have the means. The statute prescribes that:

"It shall be the duty of all executors and administrators to pay all just claims against the deceased, exhibited to them, or a just proportionable part thereof, according to the assets." Thompson's Digest, page 38, § 79.

This case does not come within the principle of the cases relied upon in behalf of the heirs-at-law. The equity court had, by decree, declared that the assets were insufficient for that purpose, and had decreed that the realty should be sold to pay the debts. It had jurisdiction for this purpose and for no other. This decree had been passed, and the sale had actually taken place. At the time when the case was referred to the auditor for the distribution of the proceeds, the sale had been finally ratified by the court, and the funds were in its hands, and constituted equitable assets for the sole purpose of paying the *just* debts of the intestate. Dixon

*vs.* Ramsey, 1 Cr. C. C., 496; Lynch, ex'r, *vs.* Yeaton, 3 Ibid., 482; Black *vs.* Wilder, 1 Atk., 420; Brooks *vs.* Brooks, 12 G. & J., 306; Nelson *vs.* Bank, 27 Md., 69, 1 Story Eq. Jurs., §§ 531, 547, 548, 551, 552; Moses *vs.* Murgatroyd, 1 John. Ch., 130; Codwise *vs.* Gelston, 10 John., 522.

The money, being equitable assets in the custody of the court for the especial purpose of paying the just debts of the intestate, will, by relation back, be considered by the court as converted into assets from the date of the decree, and this because such a retroactive operation "is required to advance the purposes of equity." Belts *vs.* Wirt, 3 Md. Ch. Dec., 113. This is with the rule of the common law which gives judgments entered during the term, relation back to the beginning of the term.

It will be found, upon an examination of the authorities cited in the brief in opposition, that the parties in each case mentioned, were proceeding directly against the realty for their own advantage. In this case, the petition of this creditor was filed, after the conversion, in contemplation of equity, of the realty into equitable assets. The equity court was bound to convert this realty into assets to pay the debts, because every man's property, real as well as personal, is bound for the payment of his just debts. After the conversion, the only question as to this creditor, was, whether or not her judgment debt was a "just" one. She did not pray for a sale of realty, because the sale had already been made ; she could only ask for an application of a fund, created by the court for that purpose, to the payment of the debt due her.

"In equity, money directed to be laid out in land, will, before investment, be considered as land ; and land directed to be sold and converted into money, will, before sale, be considered as money, and pass as such." Leadenham *vs.* Nicholson, 1 H. & G., 267.

The plea of the Statute of Limitations in this particular case should not be regarded with favor. The action at law was instituted long before the statute had run. The default of the guardian or the breach of the bond was not declared

32

until the 2d day of April, 1880, when he rendered his final account, showing a balance due to his ward of $5,194.25, and the action was instituted on the bond on the 9th of the same month. If the intestate had not died, there would have been no obstacle in the way of making his realty respond. Can a just debt be cancelled by the death of the debtor who leaves a large estate in realty? Will a court of equity go out of its way to uphold such a doctrine? The Court of Appeals of Maryland, in a kindred case, and upon this very subject of the accident of death, uses the following language:

"If relief in the mode in which he has now sought it be denied to the appellant, he is wholly without remedy. And what is it that has placed him in this lamentable condition? The simple accident that, before payment of his claim has been ordered, and notice given and demand made, the trustee has departed this life. To place himself in a condition to assert his rights in a legal forum has, by that accident, become impracticable. Can a stronger case than that now before us, for the interposition of a court of equity upon one of its well-established heads of equitable jurisprudence, be well imagined?" Brooks *vs.* Brooks, 12 G. & J., 320.

The statute laws in force in this District are ample to prevent the abatement of actions at law, and to carry them on for or against administrators. See Thompson's Digest, 1, R. S. U. S., sec. 955.

2. Should the court feel bound to sustain the position taken in behalf of the heirs-at-law, then this creditor is entitled to all the assets in the hands of the administrator; or, in other words, she is entitled to have the funds marshalled, and to have the $1,206.44 in the hands of the administrator wholly applied to the payment of her judgment.

This is upon the well-known principle of equity, that where some of the creditors of an estate may resort, for the satisfaction of their debts, to either of two or more funds, whilst others are confined to one only, a court of equity will marshal the funds and thus enable those who are confined to one fund to receive due satisfaction. Equality is equity. 1 Story's Eq., §§ 547, 557, 558, 559.

EDWARDS & BARNARD for defendant:

1. *The claim of the petitioner is not sustained by any competent proof.*

The allegations in the petition, and the short copy of the judgment against John Hitz showing also a finding of the jury against the administrator of Florian Hitz, for the amount stated, attached to said petition as an exhibit, are relied on by the petitioner to establish her claim against these infant heirs.

This proceeding is controlled and governed by the local law of the District of Columbia.

That law makes the proceedings against the administrator and the heir, when the latter proceeding is necessary, entirely independent of each other. The duties of the administrator are confined to the personal estate, and never beyond it. If that be insufficient to discharge the debts, and it be necessary to resort to the realty of the deceased for that purpose, a proceeding against the heir must be instituted. In that event, whatever has been done by the administrator is without effect as to the property sought to be charged. A judgment against the administrator is not evidence against the heir. The demand must be proved in all respects as if there had been no prior proceedings to effect its collection; and the Statute of Limitations may be pleaded with the same effect as if there had been no prior recovery against the personal representative. Ingle·*vs.* Jones, 9 Wall., 495; Keefe *vs.* Malone, 3 Mac Arthur, 236; Drummond *vs.* Green, 35 Md., 148; McDowell *vs.* Goldsmith, 24 Md., 214; Collison *vs.* Owens, 6 G. & J., 4; Duvall *vs.* Green, 4 H. & J., 270; Byerly *vs.* Staly, 5 G. & J., 432; Warfield *vs.* Welch, 3 G. & J., 259.

The original bond of the petitioner's guardian is the foundation of her claim in this proceeding against the heirs of one of the deceased sureties. This bond is not now produced, or a duly certified copy thereof filed or offered in evidence, or the absence of the original in any manner attempted to be explained or accounted for; nor is there any evidence that it was approved by the court or register as required by

law.   No administration (guardian) bond is binding unless first approved by the court or register.   Md., 1798, ch. 101, sub-ch. 3, sec. 1; Crawford *vs.* The State, 6 H. & J., 231.

2. *The plea is good, and should be sustained.*

"All actions upon administration and testamentary bonds shall be commenced within twelve years after the passing of the said bonds, and not after."   Md., 1729, ch. 24, sec. 21.

"Nothing in this act shall be construed to bar any person within the age of twenty-one years, *feme covert, non compos mentis,* or imprisoned, or persons beyond seas, from bringing an action or actions within six years after their coming to or being of full age, uncovert, sound memory, at large, or returned from beyond seas, upon any administration or testamentary bond."   Ib.

By the testamentary act of 1798, chap. 101, sub-ch. 12, sec. 4, it is provided that the bond of a guardian "shall be recorded, and be subject to be put in suit, and be in all respects on a footing with the bond given by an executor or administaator."

A guardian's bond, as respects the plea of limitations, is, by the act of 1798, ch. 101, sub-ch. 12, sec. 4, placed on the same footing with testamentary and administration bonds, and the term within which suits must be brought on guardian's bonds, according to the act of 1729, ch. 24, sec. 2, is twelve years after the passage of the bonds.   The State *vs.* Green, 4 G. & J., 381.

This bond is dated April 20, 1869, and the statutory period within which an action thereon could be brought expired April 19, 1881.   The petitioner attained her majority September 28, 1874, and she had, under the law, six years thereafter within which to bring her action, viz., until September 27th, 1880, even if the bond had been of more than twelve years standing when she became of age, and competent to sue; the six years exemption in her favor having expired before the bond became *functus,* she had until April 19, 1881, within which to bring her action thereon.   She brought suit against the deceased surety in his lifetime, while the bond was in force, to wit, April 9,

1880, which abated by his death before judgment, and was not revived against his administrator until July 14, 1881, some time after the bond was extinct.

The claimant's petition, however, was not filed in this cause until October 26, 1882, which, under the authority, so far as concerns the heirs, was the commencement of the action; this was more than twelve years "after the passing of the bond," and is barred by the express language of the statute.

The statute runs down to the time the claim is filed in the cause, that being regarded as the time of the commencement of the suit with respect of such claim. Hall *vs.* Ridgely, 33 Md., 318; Abrahams v. Myers, 40 Md., 499; Ohio Life Ins. and Trust Co. *vs.* Winn & Ross, 4 Md. Ch. Dec., 252; McDowell *vs.* Goldsmith, 2 Md. Ch. Dec., 370. (Affirmed in 6 Md. Rep., 319.)

This being the law, it is immaterial whether the petitioner was born September 29, 1853, or on the same day and month in 1855. In either event the statute was a bar to her action commenced, as stated, October 26, 1882. In the one case the claim was barred April 19, 1881, in the other, September 28, 1882.

3. *The exceptions of the petitioner should be overruled, and those of the defendants sustained, and the petitioner declared not entitled to receive any portion of the proceeds of the sales not awaiting distribution.*

The principal points raised by petitioner's exceptions are:

*First.* That she is a judgment creditor of Florian Hitz, deceased, and entitled to priority in the settlement of her claim over that of the National Metropolitan Bank, because the latter is a mere simple contract creditor.

*Second.* Because the assets of said deceased surety, including the proceeds of the sales of the real estate, are not marshalled, so that in case she be not entitled to participate in the distribution of the proceeds of said sales, she is then entitled to be paid in full out of the funds which came into the hands of the administrator.

The first point is clearly untenable. A judgment for

assets against an administrator has no priority over a simple contract creditor, even in the administration of the personalty. Md., 1798, ch. 101, sub-ch. 8, sec. 17; Byrely's Ex. *vs.* Staley, 5 G. & J., 432.

Neither can the second point be maintained. If the claimant be allowed to absorb the personalty, she would throw the other creditors, whose debts are not barred, on to the realty, and thereby indirectly establish a claim against the heirs expressly barred by the statute.

The rule that where one of two creditors has a *lien* and the other has not, the latter can compel the former to *resort to his lien*, in order that the general creditor may be paid off out of the other assets of the debtor, is not applicable here. Collison *vs.* Owens, 6 G. & J., 8.

It is submitted that the plea should be sustained, the claim of the petitioner disallowed, and the fund in the hands of the trustees distributed in accordance with the schedule marked C accompanying the auditor's report.

Mr. Justice Cox delivered the opinion of the court. After making the foregoing statement of the case, he proceeded:

It should be remarked here that there is an irregularity in the form in which the auditor has made his report. He files alternative statements of account, but does not adopt either as his report. The proper way is for him to decide which statement is correct and adopt that, and allow it to be excepted to. That is, however, not very material.

The whole question turns on the defence of the Statute of Limitations to this claim of Daisy F. Casparis. The law upon the subject is found in the act of assembly of Maryland of 1729 and the additional one of 1798, the testamentary act. The first provides, that—

"All actions upon administration and testamentary bonds shall be commenced within twelve years after the passing of the said bonds, and not after."

Guardians' bonds are put on the same footing by the act of 1798. Then there is this provision in the same act of 1729:

"Nothing in this act shall be construed to bar any person

within the age of twenty-one years, *feme covert, non compos mentis,* or imprisoned, or persons beyond seas, from bringing an action or actions within six years after their coming to or being of full age, *uncovert,* sound memory, at large, or returned from beyond seas, upon any administration or testamentary bond."

. The bond in this case is dated April 20th, 1869, and the present suit was commenced July 28, 1882, which was nearly thirteen years after the date of the bond, or "after the passing" of the bond, in the words of the act of assembly. On the face of it it would appear to be barred by the Statute of Limitations. There is a question as to the date of the birth of this petitioner, and whether she does not come within the exception of persons *under age.* It is claimed, on her part, that she was born in the autumn of 1854, and by the defence it is claimed she was born in September, 1853. If the former were true, then the suit was brought within the time, because the six years would not have elapsed after she became of age. But we are satisfied that the weight of testimony shows very clearly that her birth was in 1853, so that she came of age on the 28th of September, 1874. She then had not only six years, but seven years after she became of age for the institution of this suit, before the twelve years of the life of this bond had expired. So that this exception does not avail her anything.

The petition of Daisy F. Casparis proceeds upon the theory that she had recovered a judgment, and that that judgment is her cause of action; that the judgment is good against the real estate, the real assets, as well as against the administrator. But it is perfectly well settled in this jurisdiction, by the Court of Appeals of the State of Maryland, and by a decision of this court, in Keefe *vs.* Malone, 3 Mac Arthur, 236, and, above all, by a decison of the Supreme Court of the United States, in the case of Ingle *vs.* Jones, 9 Wallace, 495, that a judgment recovered against the administrator is not even *prima facie* evidence against the heir-at-law, but the plaintiff must commence *de novo* against the heir upon his or her original cause of action, as if no suit had been instituted against the

administrator. Not only that, but the heirs-at-law are at liberty to make any defence that any one else could make to such new suit, and, among others, the defence of the Statute of Limitations. It, therefore, seems to us very plain that the defence of limitations must be sustained.

Another point made on the part of the petitioner is that these assets ought to be *marshalled*; that is to say, that inasmuch as she has no recourse against the real assets, and the other complainants have against both personal and real, the latter ought to be excluded from participation in the personal assets, and these should be applied to her claim, and the other creditors thrown on the proceeds of the real estate. The rule undoubtedly is that if one creditor has a lien upon, or has a resort to, two different funds belonging to the debtor, and another one may only resort to one of them, the law, in order to save the latter, will throw the creditor having the larger and more ample remedy on the fund not common to both, in order to save the other debt. But that hardly applies to a case like this. This is a case in which all the creditors have, at law, a similar recourse to all parts of the debtor's estate, and one of these creditors lost it by her own laches. That is, she had as much right as these other claimants to proceed against the real assets, but failed to bring her suit in time. We never have known a case where the law marshalling assets applied to a case like that, and the contrary is laid down by the Lord Chancellor, in 10 Hare's Reports, 229, in the following language :

"It is said next, that under the doctrine of marshalling, the right of the plaintiffs must be considered to subsist for the period of twenty years ; and Vickers *vs.* Oliver and Gibbs *vs.* Ogier are relied on upon that point. But upon examining the case of Vickers *vs.* Oliver, it will, I think, be found that the judgment does not at all bear out the marginal note as to the simple contract creditor not being barred by the lapse of less than twenty years ; and in Basby *vs.* Seymour (1 J. & L., 527), that case seems to me to be referred to the true ground on which by the judgment it was rested. And with reference to the case of Gibbs *vs.* Ougier, it goes

no further than to decide that the court will marshal the assets, although the right to marshal may not be distinctly raised by the pleadings; it does not at all affect the question which arises in the present case, whether the court will do so at the instance of a plaintiff whose immediate right against the real estate is barred by the Statute of Limitations. I can find no authority which goes to that extent. Simple contract creditors have now a direct right against the real estate in case of a deficiency of the personal. They do not require the aid of this court to marshal the assets in order to give them a remedy against the real estate; and for whatever purpose the doctrine of marshalling may be necessary to be kept on foot, I do not think that it ought to be kept alive for the purpose of giving indirectly a right which could not be asserted directly. The consequence would be that, in all cases where there are any specialty debts, the simple contract creditors would be entitled to sue the real estate at any time within which the specialty creditors could have sued; in effect, to create in equity the same limitations as to simple contract debts as the statute has prescribed as to specialties."

It does not seem, therefore, that the doctrine of marshalling could apply to this case, and we must, therefore, sustain the exceptions of the defendant to the alternative statement made by the auditor in which the claim of this petitioner is allowed, and overrule the exception of the petitioner to the other alternative statement from which it is excluded. The case was certified to be heard here in the first instance, and the order will have to be drawn in that form.

THE CHIEF JUSTICE. We are unanimous in this opinion, although it involves a very great hardship. This estate belonged to a party who died pending a suit against him in a court of law, and the law steps in and says that the suit shall not abate, but survive, and directs that the administrator shall be made a party to it, and the suit proceed to judgment. In the meantime the heirs assert their estate in

33

the real property of the deceased, as they have a right to do, subject to the incumbrances and the indebtedness of the intestate. At the same time the plaintiff proceeds to judgment, and gets it—a judgment which if it had preceded the death of the party twenty-four hours would have been a lien upon all this real property. But inasmuch as the defendant did not live to the end, instead of the right of action surviving, it really only partially survives, that is to say you have the interposition of a statute which says that a judgment against an administrator shall only go into effect against the personal assets of the intestate. It seems to me this is a solecism in legal remedies. First, the law declares that a party's rights shall not be forfeited by death, but shall survive, and they do survive, but they do not take effect on the substance of the defendant. In the meantime the heirs, who derive all their estate through and in subordination to the claims of the defendant in judgment, take possession of the substance and leave the cast-off shoes of the estate to the creditor. Now, that is reversing the general proposition that inheritors of property take it *cum onere*; under this statute they take it absolved, absolved of debts created by the intestate, debts that are anchored in the substance and created on the faith of the property of the party. Still, I do not know how we can render any other decision in this case under the light of authority as it exists, than the decision which has just been pronounced. I have been, myself, fighting this incongruity earnestly, in the interest of sensible construction, but I cannot escape the duty of uniting in this opinion under the circumstances, for the express authority is that this judgment under no circumstances takes effect on other than personal assets of the deceased. That is the line of authority beyond question, and especially in this jurisdiction. But in establishing that line of authority, both in legislation and upon the bench, evidently the protraction of the right of survival of the action, with all its energies, in the execution which is to issue on the judgment has been overlooked, or to that extent it does not survive; it is merely protracted to hunt after the per-

sonalty of the deceased. It is a fraud, legal, not judicial, for it comes from the law makers; the judiciary have nothing to do with it. It is dogmatically provided by the legislative authority that you shall only have judgment against the personal assets of the decedent as against an administrator, and under the language of the statute I do not know how the courts can decide other than they have done.

Mr. Justice MAC ARTHUR: While I give my assent to the decision which has been announced, I must acknowledge that I sympathize with almost every expression that the Chief Justice has just uttered. I think this case demonstrates that there should be exceptions made to a general principle of law which, as a general principle, may be very proper in its application, since no general principle can exist without inflicting, in special instances, great inconvenience, and, perhaps, apparent injustice. This, I think, is one of those cases, and that is the reason why I am in accord with the views expressed by the Chief Justice.

As has been stated, the action in this case was commenced in the lifetime of the ancestor, and he died before it was perfected in judgment. Of course, the general principle comes in that a judgment against the administration is not evidence against the heirs. But we all know, and all concede, that that was a personal action, and that the heirs are interested in the personalty as much as in the real estate, and why they should be considered as being represented by the administrator in relation to one kind of property and not in relation to the other kind of property, appears to be a mere figment of the brain. But such is the law.

If the action had been commenced against the administrator instead of against the party himself, there might be less objection to the denial of justice. But that was not the case. This young woman commenced her suit before the statute had run against it, and she did all she could to get judgment against the man who, unfortunately for himself as well as for this woman, died.

Another special circumstance in this case which ought to

make it an exception to the application of the rule, if that were possible—and I certainly would make an exception on that ground if I could—is the fact that a creditor commenced his suit upon his claim. The court took possession of that suit, pronounced a decree for the sale of this real estate, sold it, took the proceeds into its possession in the form of personal property, and just at this stage of the proceeding, this woman comes in with her petition for the purpose of sharing in the distribution of that personal property. But the law steps in again with its general principle, and says that although it has been converted into personal property, in contemplation of law, it is still real estate and must go to the heirs. So that this party who has prosecuted her claim throughout as well as she could, has been, by circumstances, swindled out of her claim. I wish that the Chief-Justice and myself could make an exception to these general principles and take hold of this case by main strength, but I do not see how we can do it.